# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TERRY BLACK, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00343 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the | | |
| Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Terry Black brings this case challenging the Social Security Administration's denial of his applications for Supplemental Security Income and Disability Insurance Benefits.  He applied for benefits on November 29, 2010 asserting that he was under a benefits-qualifying disability starting on April 10, 2007 due in part to liver problems, high blood pressure, and depression.  The Social Security Administration denied Plaintiff's applications based mainly on Administrative Law Judge (ALJ) Irma J. Flottman's decision.  ALJ Flottman concluded, in the main, that Plaintiff was not under a benefits-qualifying disability.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff brings this case *pro se* challenging ALJ Flottman's non-disability decision. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), the administrative record (Doc. #6), and the record as a whole.

## II.     Background

### A.     Plaintiff's Vocational Profile and Testimony

Plaintiff was 53 years old on his alleged disability onset date.  This placed him in the Social Security Administration's category of a person closely approaching advanced age. *See* 20 C.F.R. §§404.1563(d), 416.963(d).[2]  He has a high-school education and lacks vocational training.  He worked at times a delivery-truck driver.

During the hearing held by ALJ Flottman, Plaintiff was represented by counsel.  Two witnesses testified: Plaintiff and a vocational expert.

Plaintiff testified that depression, fatigue, and hopelessness interfere with his ability to work. (Doc. #6, PageID# at 72).  He continued:

> I have pains [sic] in my, where my liver is.  It's painful as far as bending down and picking anything up.  And sleep, I have a terrible insomnia, sleeping problem, where that might be why I'm so tired all the time, between that and hepatitis, this fatigue and depression, terrible depression.  They gave me some depression medication, and it's helped enough that I can go on the Interferon.

*Id*. at 72.  He has problems with insomnia.  He sometimes sleeps only 2 hours at a time.

---

[2] The remaining citations to the regulations will identify the pertinent Disability Insurance Benefits regulations with full knowledge of the corresponding Supplemental Security Income regulation.

Other times he sleeps about 2 hours, wakes for about 1 hour, then goes back to sleep for a couple hours.  The medication he takes for his sleeping problems leaves him the next morning feeling "kind of hung over like." *Id*. at 75.  He also takes an anti-depressant medication that helps him "somewhat." *Id*. at 74.  In the morning when he first wakes up, he feels hopeless.  He then has a cup of coffee, watches TV, and prays a lot. *Id*. at 82.

Plaintiff also suffers from a bipolar issue, which causes him "feelings of excitement and euphoria, lasts about a week, then back down again with depression." *Id*.  He also feels "invincible more or less ...," which causes him to spend more money than he should. *Id*. at 81.  When he has these feelings, he often does not sleep for even 2 hours.

Plaintiff feels ongoing pain near or in his liver.  The pain becomes sharp his right side when he bends over.  He also experiences swelling when he bends over.  He cannot stoop or crouch without feeling some pain.  Otherwise, he feels a "consistent light pain ...." *Id*. at 80.

Plaintiff estimated that he could walk 30 to 40 feet, stand and walk for about 30 minutes, and lift 5 to 10 pounds.  He can sit for 45 minutes but then gets anxious. *Id*. at 75-76.  He gets tired when using the stairs, so he never climb stairs.  His most comfortable position is sitting.

His daily activities include seeing his girlfriend quite frequently.  She does some of his grocery shopping for him.  He is able to prepare his own meal sometimes (about once a week) and other times his friends help him.  In addition to his girlfriend, his friend David sometimes helps him with grocery shopping and cleaning his apartment.  Plaintiff usually

eats just 1 meal a day due to depression.  He does household chores when he feels good enough, about once a month.  This involves dishwashing, dusting, and cleaning the bathroom.  He dresses himself without difficulty.  He has no hobbies except watching TV.  He is usually able to focus on the TV shows he watches.  He sometimes attend church when he feels up to it, but he does not belong to any groups or organizations.

Plaintiff was incarcerated in September 2007 until his release to a halfway house in May 2010.  (Doc. #6, PageID# at 71).  He's had difficulty with drug abuse at times.  He tested positive for cocaine in 2012 but had been clean for almost 6 months before the ALJ's hearing.  In 2011, he used crack cocaine about once a week.  At the time of the ALJ's hearing, he had been in a drug rehabilitation program for about a year.

  **B.** **Medical Evidence**

A detailed summary of the medical evidence is unnecessary because the undersigned has reviewed the entire administrative record and because the ALJ accurately referred to the relevant records with citations to specific evidence.  The pertinent medical evidence will be discussed below.

**III.** **"Disability" Defined
and ALJ Flottman's Decision**

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as the term is defined by the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both benefit programs.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70

4

(1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70.

As noted previously, it fell to ALJ Flottman to evaluate the evidence connected to Plaintiff's benefit applications. She did so by conducting the 5-step sequential evaluation mandated by Social Security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). She ultimately concluded that Plaintiff was not under a benefits-qualifying disability based on the following findings:

> Step 1: Plaintiff had not engage in substantial gainful activity since his alleged disability onset date (April 10, 2007).
>
> Step 2: Plaintiff's severe impairments include mild chronic liver disease with history of Hepatitis C, hypertension, affective disorder, anxiety disorder, personality disorder, and crack-cocaine dependence.
>
> Step 3: Plaintiff's impairments did not meet or equal the criteria of an impairment in the Commissioner's Listings.[3]
>
> Step 4: Plaintiff could perform medium work limited to only simple, routine, and repetitive tasks with not strict production quotas or fast-paced work. In light of this, Plaintiff could not perform his past relevant work.
>
> Step 5: A significant number of jobs exist in the national economy that Plaintiff can perform.

---

[3] The Listings are found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

## IV. <u>Judicial Review</u>

The Social Security Administration's denial of Plaintiff's applications for benefits – here, embodied in ALJ Flottman's decision – is subject to judicial review along two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings.  *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her*, 203 F.3d at 389-90.  Instead, substantial evidence supports the ALJ's factual findings when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..."  *Rogers*, 486 F.3d at 241.

## V. <u>Discussion</u>

Construing in Plaintiff's favor his *pro se* Statement of Errors reveals several contentions: (1) the ALJ erred by not considering Plaintiff's statements and, instead, only

6

considering the statements of his drug counselor (presumably in medical records); (2) some statements in the record, or made by the ALJ, were incorrect particularly the statement that Plaintiff could work when he cannot work; and (3) some of the doctors' written statements were false. (Doc. #8). The Commissioner contends that substantial evidence supports the ALJ's assessment of Plaintiff's residual functional capacity and his credibility.

Reviewing the ALJ's decision for legal error reveals none. The ALJ correctly described the legal criteria applicable at each step of the sequential evaluation. (Doc. #6, *PageID*#s 54-55). At step 1, the ALJ made findings favorable to Plaintiff, noting that he meets the insured status required for Disability Insurance Benefits through September 30, 2008, and that he had not engaged in any meaningful paid work (substantial gainful activity) after his asserted disability onset date. *Id.* at 55. The ALJ's finding at step 2 that Plaintiff had several severe impairments also favored him. *Id*. Although the ALJ found at step 3 that Plaintiff did not have an impairment that meets or equals one in the Commissioner's Listing of Impairments, the ALJ supported this conclusion with specific reasons and citations to evidence of record. No error is present here, and Plaintiff's arguments do not point to a problem or error in the ALJ's step 3 discussion or conclusion.

At best for Plaintiff, his arguments arise at step 4 of the ALJ's decision where she assessed Plaintiff's residual functional capacity and credibility. Plaintiff's residual functional capacity refers to the most he can do in the workplace despite his mental and physical limitations. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th 2006) (en

banc).  The ALJ reasonably determined that Plaintiff was capable of a reduced range of medium work, properly questioned the vocational expert regarding a hypothetical individual with Plaintiff's limitations, and reasonably relied on the vocational expert's testimony to determine that Plaintiff could perform a significant number of jobs that exist in the national economy.  In support of her findings, the ALJ reasonably relied on the only medical opinions in the record; those of the state agency reviewing physicians and the consultative examiner.  *See* Doc. #6, PageID# 59; *see also* 20 C.F.R. §416.927(e)(2)(i) (State agency consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.").  Dr. Bolz reviewed the record in March 2011, and Dr. McCloud reviewed the record in September 2011.  (Doc. #6, PageID#s 98-99, 107-08, 122-23, 136-37).  Both of these physicians opined that Plaintiff was able to lift 50 pounds occasionally and 25 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day.  *Id*.  After examining the objective evidence in the record, including the evidence regarding Plaintiff's chronic liver disease with a history of hepatitis C and hypertension, the ALJ reasonably concluded that the opinions provided by Drs. Bolz and McCloud were consistent with the evidence in the record and gave them significant weight *Id*. at 56-59; *see* 20 C.F.R. §404.1527(c)(3)-(4) (medical opinions evaluated for supportability and consistency).  As the ALJ explained, Plaintiff had chronic liver disease with a history of hepatitis C.  Yet, a November 2012 ultrasound showed only mild heterogeneous echotexture of the liver and mild hepatocellular disease.  (Doc. #6, PageID#s

58, 610, 616).  Further, Plaintiff's liver was not enlarged and had no focal abnormalities.  *Id*. at 58, 455-56, 616.  Although Plaintiff suffered from hypertension, he declined medication to treat the condition and complained solely of angina.  *Id*. at 58, 331, 397-98.  To accommodate this health problem, as it could be exacerbated by overexertion, the ALJ limited Plaintiff to medium work.  *Id*. at 57-58.

As far as Plaintiff's mental impairments, the ALJ gave only some weight to the opinions of the state agency reviewing psychologists, who opined that Plaintiff did not have a severe mental impairment, *id*. at 59, 97, 106, 121, 135, but gave significant weight to the opinion of examining psychologist, Dr. Kramer, because he had the opportunity to examine Plaintiff.  *Id*. at 59, 461-67.  This was a legally valid approach to weighing medical-source opinions.  *See* 20 C.F.R. §404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

Substantial evidence, moreover, accepted this aspect of the ALJ's decision.  Dr. Kramer examined Plaintiff in October 2011 and determined that he had bipolar disorder, depressed; anxiety disorder not otherwise specified; cocaine dependence in sustained remission; and adult antisocial behavior.  (Doc. #6, PageID# 466).  Despite these impairments, Dr. Kramer opined that Plaintiff had a good ability to understand, remember, and carry out instructions, and should have no difficulty performing simple tasks.  *Id*. at 59, 466-67).  Overall, Dr. Kramer opined that Plaintiff would be able to "function adequately in work settings where there was not a lot of stress or demand for speed."  *Id*. at 467.  The ALJ

reasonably concluded that this was consistent with the other evidence in the record, including Plaintiff's diagnoses of affective disorder, anxiety disorder, personality disorder, and cocaine dependence, his reports of feeling depressed and hopeless and having issues with anger, anxiety, crying spells, and lack of motivation, and his treatment records. *See id*. at 58, 450, 483, 487, 526-28, 619-65, 666-717. Consequently, the ALJ reasonably gave Dr. Kramer's opinion significant weight, and Dr. Kramer's opinions supported the ALJ's finding that Plaintiff was limited to work involving simple, routine, and repetitive tasks with no strict production quotas or fast-paced work.

Plaintiff contends that some of that some of the doctors' statements were false, but he does not indicate which statements were false. More significantly, the record lacks evidence suggesting that any medical provider acted improperly. Without supporting evidence, Plaintiff's allegation lacks merit.

Turning to the ALJ's credibility findings, the present review begins with knowledge that a person's statements about his "pain or other symptoms will not alone establish that [he is] disabled ...." 20 C.F.R. §404.1529(a). The record must contain objective medical evidence of an underlying medical condition. When such evidence exists, the inquiry explores (1) whether the objective evidence confirms the severity of the claimant's pain or other symptoms, or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged pain or other symptoms. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted). In

some situations, a person's symptoms "suggest a greater severity than can be shown by objective medical evidence alone ...." 20 C.F.R. §404.1529(c)(3). If this occurs, the ALJ considers other factors, including for example, the person's daily activities; the location, duration, and intensity of pain or other symptoms; precipitating and aggravating factors; and the effectiveness and side effects of medications. *Id.*; *see Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. However, the ALJ is not free to make credibility determinations based solely upon an '"intangible or intuitive notion about an individual's credibility."' *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (internal citations omitted). Substantial evidence must support the ALJ's reasons for discounting the applicant's statements. *See id*. at 248-49.

In the present case, the ALJ described the correct legal criteria applicable under the Social Security Administration's credibility regulations. *See* Doc. #6, PageID#s 59-60. The ALJ then engaged in a detailed discussion of the evidence. Substantial evidence supports the ALJ's main credibility findings. The ALJ considered Plaintiff's allegations noting that he testified about his insomnia, fatigue, depression, and bipolar disorder. The ALJ, for

11

example, recognized that Plaintiff's bipolar "condition causes him to have feelings of excitement, invincibility and euphoria that last about a week. During that time he behaves irresponsibly and rarely sleeps. After about a week, he returns to depression." *Id*. at 61. The ALJ also documented Plaintiff's physical impairments, by recognizing, for example:

> The claimant has a chronic liver disease with a history of Hepatitis C. He has been receiving treatment at Cassano's for the last two months for this condition. He went to classes, had blood work done and had a biopsy as a required precursor to getting interferon injections as treatment for his Hepatitis C. The interferon has been ordered and he should start injections once it is delivered in about 3 weeks. He has constant pain in the area of his liver. He takes Aleve for this pain.

*Id*. at 61. Although the ALJ considered this and other testimony and statements by Plaintiff, she reasonably concluded that he was not entirely credible. Substantial evidence supports the ALJ's reasons for discounting Plaintiff's credibility. The ALJ noted that Plaintiff made inconsistent statements throughout the record. This is a legally valid reason for discounting Plaintiff's credibility. *See* Social Security Ruling 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."); *see also Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). Substantial evidence supports this reason. At the hearing and during his consultative examination Plaintiff stated that he experienced manic feelings, but he did not report feelings of mania during his sessions with mental health professionals. (Doc. #6, PageID#s at

555-87, 630-749). Instead, on several occasions, he specifically denied mania and related feelings. *Id*. at 61, 628, 632, 637, 642, 647-48, 652. He also told a treatment provider in 2012 that he had last used drugs in 2007 despite failing a number of drug tests since 2010. *Id*. 61, 560, 562, 564, 568, 611, 692. The ALJ also properly considered the fact that Plaintiff's activities of daily living were inconsistent with his allegations of total disability. *See* Soc. Sec. R. 96-7p, 1996 WL 374186 at *5 (an ALJ may consider statements about a claimant's daily activities when assessing credibility); *see also Meyer v. Comm'r of Soc. Sec.*, 2011 WL 1124698 at *11 (S.D. Ohio Feb. 11, 2011) (Litkovitz, M.J.) ("As a matter of law, the ALJ may consider [a claimant's] household and social activities in evaluating her assertions of pain or limitations.") (citing *Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990)).

The ALJ reasonably considered the fact that Plaintiff has refused treatment for both his physical and mental conditions. *See* Doc. #6, PageID#s at 61, 494, 584; *see also Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."); *Blacha*, 927 F.2d at 231 (holding that a failure to seek treatment for a condition is a factor that may be considered in assessing credibility).

Furthermore, as discussed above, the record does not contain an opinion by a treating medical source. "The absence of sufficient medical evidence makes credibility a particularly

13

relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters,* 127 F.3d at 521 (citation omitted).

Turning to step 5 of the ALJ's evaluation, she properly relied on testimony by a vocational expert. The ALJ asked the vocational expert if a hypothetical person with Plaintiff's background and residual functional capacity could perform any jobs (Doc. #6, PageID# 84). The vocational expert testified that someone with those limitations could perform approximately 55,000 jobs in the regional economy, including, for example, industrial sweeper/cleaner, laundry worker, and hospital cleaner. *Id*. at 63. The ALJ reasonably relied on this testimony to find, at step 5, Plaintiff capable of performing a significant number of jobs in the national. *Id*. at 62-63; *see Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (an ALJ may rely on the vocational expert's testimony in response to a hypothetical question if the question accurately portrays a claimant's impairments).

Accordingly, for the above reasons, Plaintiff's Statement of Errors lacks merit. *See Her*, 203 F.3d at 389-90 ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be affirmed; and

    2.       The case be terminated on the docket of this Court.


November 5, 2015

                                        s/Sharon L. Ovington
                                          Sharon L. Ovington
                           Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).